[No. S176171. Oct. 18, 2010.]

RANDOLPH CLIFTON KLING, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

1070

## Counsel

Duane Dammeyer and Steven P. Lipson, Public Defenders, and Michael C. McMahon, Chief Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Gregory D. Totten, District Attorney, Michael D. Schwartz, Special Assistant District Attorney, Cheryl M. Temple and Michelle J. Contois, Deputy District Attorneys, for Real Party in Interest.

Bilenda Harris-Ritter for the National Crime Victim Law Institute and the California Voice for Crime Victims, Inc., as Amici Curiae on behalf of Real Party in Interest.

## Opinion

**BAXTER, J.**—Under Penal Code section 1326, subdivision (c), a person or entity responding to a third party subpoena duces tecum in a criminal case must deliver the subject materials to the clerk of court so that the court can hold a hearing to determine whether the requesting party is entitled to receive them. When, as here, the defendant is the requesting party, the court may conduct that hearing in camera. (Pen. Code, § 1326, subd. (c).)

What is the People's role at such a hearing? The Court of Appeal held that the People were entitled to notice of, and to be present at, the hearing once the responsive documents have been produced, but were not permitted to learn the identity of the subpoenaed party or the nature of the documents requested. The Court of Appeal further held that, unless the prosecutor has been requested by a crime victim to enforce his or her rights under Proposition

9, the "Victims' Bill of Rights Act of 2008: Marsy's Law" (Cal. Const., art. I, § 28), the prosecutor is not authorized to argue at or otherwise participate in the in camera hearing, except to answer any questions the trial court may have, and, furthermore, that the entire hearing may be held ex parte.

■ The parties now agree that the Court of Appeal erred in unduly restricting the People's role at the in camera hearing, in that the prosecutor may participate in and argue at the hearing, if the trial court so desires. (*People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 750–752 [76 Cal.Rptr.3d 276, 182 P.3d 600].) We find that the Court of Appeal also erred in categorically denying the People the right to discover the identity of the subpoenaed party and the nature of the documents sought under the third party subpoena (including the identity of the person to whom the documents pertain), inasmuch as the People's due process right to a meaningful opportunity to be heard may typically require at least that much information. The constitutional rights of the defendant can usually be protected by redacting those materials that disclose privileged information or attorney work product, by conducting portions of the in camera hearing ex parte, and by withholding disclosure to the prosecution of the records produced under the subpoena until the defense has determined that it intends to offer them in evidence at trial. (Pen. Code, §§ 1054.3, subd. (a), 1326, subd. (c).) We therefore reverse the judgment of the Court of Appeal and remand the matter for further proceedings.

### BACKGROUND

A Ventura County grand jury charged petitioner Randolph Clifton Kling with the murders of Michael and William Budfuloski with the special circumstances of multiple murder, lying in wait, and financial gain, in addition to other felony counts. The statement of facts and procedural history below is drawn largely from the opinion of the Court of Appeal.

Prior to trial, the defense served subpoenas duces tecum on a number of third parties. Kling requested the trial court not to disclose information concerning the subpoenas to the prosecution, contending that such information would reveal defense strategies and work product. The prosecution responded that the People "have a right to know the items subpoenaed . . . and what the court is contemplating releasing, to determine if the People have standing to object, to alert other persons who may have standing to object, or to join the defendant's attempt to obtain information therein." On February 5, 2008, the trial court ordered that all documents received by the court pursuant to a defense subpoena were "to be logged in the docket, noting the date received and the party supplying the documents." The court stated that it found "no authority supporting the defense request to have no documentation

in the file identifying the receipt of subpoenaed documents and the agency or person from whom they were received" and concluded that such information was not privileged.

The subpoenaed records were delivered to the clerk of the court and examined by the court in camera in the presence of defense counsel. (Pen. Code, § 1326, subd. (c).) The court released the records to the defense and ordered transcripts of the in camera hearings sealed. The People received no notice as to some of these hearings.

On May 20, 2008, relying on our recent decision in *People v. Superior Court (Humberto S.)*, *supra*, 43 Cal.4th 737, the People requested that the trial court examine the transcripts of all previously closed hearings and unseal any portions of the transcripts that did not reveal defense theories of relevance or other privileged information. The trial court issued an order unsealing the transcripts of in camera hearings held on November 28, 2007, and March 28, April 8, April 28, and May 1, 2008, and a portion of the transcript of the proceedings on February 20, 2008. The court stated that the transcripts it had ordered unsealed contained "nothing but cursory discussions of subpoenaed records, nothing about defense strategy" and announced its intention to review the transcripts of December 27, 2007, and March 6, 2008, and to issue a ruling whether those transcripts should be unsealed as well. The trial court stayed its order unsealing the transcripts to permit defense counsel to seek writ relief.

After Kling filed the instant petition for writ of prohibition and the People filed a return, the Court of Appeal granted relief in a published opinion, declaring that "[n]o statutory or constitutional authority permits disclosure to the prosecution of the names of the third parties to whom defense subpoenas have been issued or the nature of the records produced." The court added that if, following receipt of the documents, a trial court were to conduct an in camera hearing under Penal Code section 1326, subdivision (c), the prosecution's role at such a hearing would be limited: "Unless the prosecutor has been requested by a victim to enforce rights guaranteed by Proposition 9, the prosecutor is not statutorily authorized to argue or otherwise participate in the in camera hearing, but may be available to answer any questions the trial court has."

While the writ was pending, the jury convicted Kling on all counts and found true the multiple-murder special circumstance as well as the lying-in-wait special circumstance as to one of the murders and set the punishment at

death.[1] The Court of Appeal acknowledged that these circumstances "may render the matter moot" but elected to resolve the petition "[b]ecause the issue here is a matter of public importance and may likely recur." Indeed, after the writ issued, the Clerk of the Ventura County Superior Court directed courtroom staff that the docket in criminal cases should no longer identify the third party from whom subpoenaed records have been received.

We granted the People's petition for review.

### DISCUSSION

 "Documents and records in the possession of nonparty witnesses and government agencies other than the agents or employees of the prosecutor are obtainable by subpoena duces tecum." (*People v. Superior Court (Barrett)* (2000) 80 Cal.App.4th 1305, 1318 [96 Cal.Rptr.2d 264].) In civil actions, documents produced in response to a subpoena duces tecum for business records may be delivered to the clerk of the court or, at the election of the subpoenaing party, made available for inspection and copying at the witness's business address. (Evid. Code, § 1560, subds. (b), (e).) This rule does not apply, however, in criminal actions. As we have explained, "[t]he issuance of a subpoena duces tecum pursuant to section 1326 of the Penal Code . . . is purely a ministerial act and does not constitute legal process in the sense that it entitles the person on whose behalf it is issued to obtain access to the records described therein[,] until a judicial determination has been made that the person is legally entitled to receive them." (*People v. Blair* (1979) 25 Cal.3d 640, 651 [159 Cal.Rptr. 818, 602 P.2d 738], citation omitted; see also *People v. Superior Court (Humberto S.)*, *supra*, 43 Cal.4th at p. 751 ["It is undisputed that trial courts are authorized, indeed obligated, to regulate the use of subpoenas to obtain privileged third party discovery."].)

 Thus, "[i]n a criminal action, no party, or attorney or representative of a party, may issue a subpoena commanding the custodian of records or other qualified witness of a business to provide books, papers, documents, or records, or copies thereof, relating to a person or entity other than the subpoenaed person or entity in any manner other than that specified in subdivision (b) of Section 1560 of the Evidence Code" (Pen. Code, § 1326, subd. (c)), which provides for delivery of the materials to the clerk of the court. (See also Pen. Code, § 1326, subd. (b) [the option of making the documents available for inspection and copying at the witness's business address (Evid. Code, § 1560, subd. (e)) "shall not apply to criminal cases"].) This restriction maintains the court's control over the discovery process, for if the third party

---

[1] The Ventura County Superior Court has since denied Kling's motion for new trial and imposed a judgment of death.

"objects to disclosure of the information sought, the party seeking the information must make a plausible justification or a good cause showing of need therefor." (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1045 [130 Cal.Rptr.2d 672, 63 P.3d 228] (lead opn. of Werdegar, J.); see also *id.* at p. 1057 (conc. & dis. opn. of Moreno, J.).)

These provisions concerning third party subpoenas apply equally to the People and the defense. The Legislature granted the defense special protections, however, in the last two sentences of Penal Code section 1326, subdivision (c): "When a defendant has issued a subpoena to a person or entity that is not a party for the production of books, papers, documents, or records, or copies thereof, the court may order an in camera hearing to determine whether or not the defense is entitled to receive the documents. The court may not order the documents disclosed to the prosecution except as required by Section 1054.3." (See also Concurrence in Sen. Amends. on Assem. Bill No. 1249 (2003–2004 Reg. Sess.) as amended June 9, 2004, p. 1.) Consequently, "the defense is not required, on pain of revealing its possible strategies and work product, to provide the prosecution with notice of its theories of relevancy of the materials sought, but instead may make an offer of proof at an in camera hearing." (*Alford v. Superior Court, supra*, 29 Cal.4th at pp. 1045–1046 (lead opn. of Werdegar, J.); see also *id.* at p. 1056 (conc. & dis. opn. of Baxter, J.); *id.* at p. 1057 (conc. & dis. opn. of Moreno, J.).) We have subsequently clarified that sealing the defense filings is appropriate only if there is "a risk of revealing privileged information" and a showing "that filing under seal is the only feasible way to protect that required information." (*Garcia v. Superior Court* (2007) 42 Cal.4th 63, 73 [63 Cal.Rptr.3d 948, 163 P.3d 939] [discussing sealing of "*Pitchess* motion" affidavits (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305])].)

■ In *People v. Superior Court (Humberto S.)*, *supra*, 43 Cal.4th 737, we addressed the role of the People at third party discovery proceedings under Penal Code section 1326 and declared that the People had the right to notice of the hearing and to be present. (43 Cal.4th at p. 749.) We also found that prosecutorial participation in third party subpoena hearings "is not prohibited" (*ibid.*), observing that "trial courts regularly permit prosecutorial participation in third party discovery," inasmuch as " 'open proceedings involving the participation of both parties are the general rule in both criminal and civil cases' " (*id.* at p. 750). Without deciding whether a trial court is *required* to do so (*id.* at p. 750, fn. 9), we concluded that "a trial court is *permitted* to entertain argument from the opposing party relating to third party discovery" (*id.* at p. 750, italics added).

In this case, we once again apply these provisions where the defense in a criminal proceeding has issued third party subpoenas. The trial court here

determined that the People were entitled to discover the identity of the subpoenaed party and the nature of the records being subpoenaed as well as to have unsealed those portions of the transcripts of the ex parte hearings that did not disclose defense strategy. Kling argues, and the Court of Appeal agreed, that although the People are entitled to notice of the hearing following the court's receipt of the subpoenaed documents, the People are categorically barred from discovering the identity of the subpoenaed party and the nature of the documents sought (unless or until the defense decides to use them at trial) and from reviewing any portion of the transcripts of the ex parte hearings, regardless of what was discussed. Kling's arguments as to why the People are not entitled to notice of the identity of the subpoenaed party or the nature of the documents sought, however, are based on misconceptions as to the scope and operation of the discovery statutes.

Kling argues first that the identity of the subpoenaed party and the nature of the requested documents must be concealed from the prosecution to compensate for what he calls the "asymmetrical and non-reciprocal" provisions in Penal Code section 1326 that "require a showing of entitlement to discovery from the defense, but not the prosecution." But, as stated above, the rules concerning subpoenas duces tecum in criminal cases are *not* asymmetrical or nonreciprocal, at least not in any way that disadvantages a criminal defendant. Even prior to the 2004 amendments to section 1326, the law provided that the issuance of a subpoena duces tecum "is purely a ministerial act and does not entitle the person on whose behalf it is issued to obtain access to the records described therein until a judicial determination has been made that the person is legally entitled to receive them." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1249 (2003–2004 Reg. Sess.) as amended Mar. 28, 2003, p. 2 (Assem. Analysis of Assem. Bill 1249), citing *People v. Blair, supra,* 25 Cal.3d at p. 651.) The 2004 amendments to section 1326 did not weaken those protections. Rather, as the author of Assembly Bill No. 1249 explained, the proposed amendments were designed " 'to better protect the privacy rights of third-party citizens and litigants alike when subpoenas are issued and served in criminal cases, and *to re-establish and strengthen judicial control* over the release of privileged and confidential records to prosecutors *and* criminal defendants in criminal cases.' " (Assem. Analysis of Assem. Bill 1249, *supra,* p. 3, italics added; see also Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1249 (2003–2004 Reg. Sess.) as amended June 9, 2004, p. 1 ["This bill makes it clear that in a criminal case, documents requested through a subpoena duces tecum shall be returned to the court and not to the requesting attorney."].) The same procedures thus apply regardless of whether the subpoena was issued by the prosecution or by the defense—except that the defense is afforded two additional protections: (1) when a defendant has issued a subpoena to a nonparty, the hearing at which the defense seeks to

justify its entitlement to the records may be conducted in camera; and (2) the records will not be disclosed to the prosecution unless or until the defendant intends to offer them as evidence at trial. (Pen. Code, §§ 1054.3, subd. (a), 1326, subd. (c).) Contrary to Kling's assumption, there is no need to construe the discovery statutes to bar disclosure of the fact of the third party subpoena and surrounding circumstances simply to enable the scheme "to pass constitutional muster" because of an "alleged lack of reciprocity."

Kling argues next that the People are not entitled to disclosure of the identity of the subpoenaed party or the nature of the documents sought because the discovery provisions of Proposition 115 (Pen. Code, § 1054 et seq.) require disclosure only of persons the defendant "intends to call as witnesses at trial" and of documents or real evidence the defendant "intends to offer in evidence at the trial." (Pen. Code, § 1054.3, subd. (a)(1), (2).) Once again, Kling has misapprehended the applicable law. As the Legislature recognized, and as reiterated in the case law, Penal Code sections 1054 through 1054.7 "do not regulate discovery concerning uninvolved third parties." (Assem. Analysis of Assem. Bill 1249, *supra*, p. 3; accord, *Teal v. Superior Court* (2004) 117 Cal.App.4th 488, 491 [11 Cal.Rptr.3d 784]; *People v. Superior Court (Barrett), supra*, 80 Cal.App.4th at p. 1313; *People v. Superior Court (Broderick)* (1991) 231 Cal.App.3d 584, 594 [282 Cal.Rptr. 418].) On the other hand, the provisions that *do* apply suggest that the People would become aware of at least the subpoenaed party's identity when the court opens the sealed envelope containing copies of the records "in the presence of all parties who have appeared in person or by counsel at the trial, deposition, or hearing." (Evid. Code, § 1560, subd. (d); cf. *People v. Superior Court (Humberto S.), supra*, 43 Cal.4th at p. 749.)

The Court of Appeal expressed concern that disclosure of basic information concerning the third party subpoena would inhibit the defense investigation, but its concern appears overstated. (Cf. *Michigan v. Lucas* (1991) 500 U.S. 145, 149–151 [114 L.Ed.2d 205, 111 S.Ct. 1743] [upholding Mich. statute requiring the defense to give notice within 10 days after arraignment of its intent to offer evidence of the victim's sexual conduct].) It is true that allowing the prosecution to learn that certain records have been subpoenaed from a third party may cause the defense to face the "difficult decision whether to subpoena the records and run the risk of bringing possibly adverse information to the attention of the prosecutor or to forgo seeking information that could be beneficial to his defense. However difficult that decision may be, we do not see it as impairing the policies behind [a defendant's] right to counsel. In essence it is [the defense] position that the prosecution, by . . . knowing [the records] have been subpoenaed by the defense, will have access

to his attorneys' work product because the prosecutor will be able to 'glean' the attorneys' thought processes and determine defense strategy. There is no basis in the law for interpreting attorneys' work product so broadly." (*Department of Corrections v. Superior Court* (1988) 199 Cal.App.3d 1087, 1097 [245 Cal.Rptr. 293]; see generally *People v. Cooper* (1991) 53 Cal.3d 771, 816 [281 Cal.Rptr. 90, 809 P.2d 865]; accord, *U.S. v. Fox* (D.Neb. 2003) 275 F.Supp.2d 1006, 1012 [adopting "the majority view" that "generalized statements about premature disclosure of 'strategy' or 'work product' will almost never be a good reason for ex parte consideration" of a request for a subpoena duces tecum under Fed. Rules Crim.Proc., rule 17(c), 18 U.S.C.].)

We further agree with the People that disclosure of the identity of the subpoenaed party and the nature of the records sought may, in many circumstances, effectuate the People's right to due process under the California Constitution. (Cal. Const., art. I, § 29; cf. *Alford v. Superior Court, supra,* 29 Cal.4th at p. 1044 (lead opn. of Werdegar, J.) [discussing "general due process principles" governing the People's role when the defense seeks confidential records of a peace officer].) Discovery proceedings involving third parties can have significant consequences for a criminal prosecution, consequences that may prejudice the People's ability even to proceed to trial. For example, a third party's refusal to produce documents requested by the defense can potentially result in sanctions being applied against the People. (*Department of Corrections v. Superior Court, supra,* 199 Cal.App.3d at p. 1093, citing *Dell M. v. Superior Court* (1977) 70 Cal.App.3d 782, 788 [144 Cal.Rptr. 418].) Protracted ex parte proceedings may result in delays, thereby interfering with the People's right to a speedy trial. (Cal. Const., art. I, § 29; Pen. Code, § 1050.) The People, even if not the target of the discovery, also generally have the right to file a motion to quash "so that evidentiary privileges are not sacrificed just because the subpoena recipient lacks sufficient self-interest to object" (*M. B. v. Superior Court* (2002) 103 Cal.App.4th 1384, 1392 [127 Cal.Rptr.2d 454]) or is otherwise unable to do so. (See *People v. Superior Court (Humberto S.), supra,* 43 Cal.4th at p. 743.) Even where the People do not seek to quash the subpoena, the court may desire briefing and argument from the People about the scope of the third party discovery." (*Id.* at pp. 750–751.)[2] Indeed, "a canvass of the underlying proceedings in reported cases suggests trial courts regularly permit prosecutorial participation in third party discovery." (43 Cal.4th at p. 750.) It is difficult to see how the People can have a meaningful opportunity to be heard if they are categorically barred from learning the identity of the subpoenaed party or the nature of the documents requested. (See *ibid.*) We therefore reject the Court of Appeal's contention that "[n]o statutory or constitutional authority

---

[2] As in *People v. Superior Court (Humberto S.), supra,* 43 Cal.4th at page 750, footnote 9, we need not decide here whether the trial court is *required* to allow argument from the People concerning third party discovery issues.

permits disclosure to the prosecution of the names of the third parties to whom defense subpoenas have been issued or the nature of the records produced."

■ A trial court's role when presented with materials produced under a defense subpoena duces tecum to a third party, then, is to balance the People's right to due process and a meaningful opportunity to effectively challenge the discovery request against the defendant's constitutional rights and the need to protect defense counsel's work product. The trial court "is not 'bound by defendant's naked claim of confidentiality' " but should, in light of all the facts and circumstances, make such orders as are appropriate to ensure that the maximum amount of information, consistent with protection of the defendant's constitutional rights, is made available to the party opposing the motion for discovery. (*Garcia v. Superior Court, supra,* 42 Cal.4th at p. 72; see also *City of Alhambra v. Superior Court* (1988) 205 Cal.App.3d 1118, 1130–1131 [252 Cal.Rptr. 789].) ■ The trial court may order an in camera review of the records produced under the subpoena duces tecum (Pen. Code, § 1326, subd. (c)) and, as the People concede, may conduct some or all of the hearing concerning the defendant's entitlement to those records ex parte in order to safeguard privileged information or attorney work product. (*People v. Superior Court (Humberto S.), supra,* 43 Cal.4th at pp. 749–750.)

The use of these extraordinary procedures, though, should be limited to that which is necessary to safeguard the rights of the defendant or of a third party, inasmuch as ex parte proceedings are generally disfavored because of their inherent deficiencies. " 'The first is a shortage of factual and legal contentions. Not only are facts and law from the defendant lacking, but the moving party's own presentation is often abbreviated because no challenge from the [opposing party] is anticipated at this point in the proceeding. The deficiency is frequently crucial, as reasonably adequate factual and legal contentions from diverse perspectives can be essential to the court's initial decision . . . .' " (*People v. Ayala* (2000) 24 Cal.4th 243, 262 [99 Cal.Rptr.2d 532, 6 P.3d 193]; cf. *People v. Superior Court (Humberto S.), supra,* 43 Cal.4th at p. 743 [the defense was erroneously granted pretrial discovery of the eight-year-old complaining witness's psychotherapy records, in violation of *People v. Hammon* (1997) 15 Cal.4th 1117 [65 Cal.Rptr.2d 1, 938 P.2d 986], because of an ex parte subpoena procedure].) Moreover, "with only the moving party present to assist in drafting the court's order there is a danger the order may sweep 'more broadly than necessary.' " (*Department of Corrections v. Superior Court, supra,* 199 Cal.App.3d at p. 1093.)

In this case, the trial court failed to give the People notice of the in camera hearings regarding the receipt of materials from third parties or to consider what information could be shared with the prosecution. After our decision in

*People v. Superior Court (Humberto S.), supra,* 43 Cal.4th 737 was brought to its attention, though, the trial court sought to remedy its error by reviewing the transcripts of all previously closed hearings and ordering unsealed those specific portions that did not reveal defense theories of the requested materials' relevance or any other privileged or protected information. The trial court thus attempted to protect Kling's constitutional rights and counsel's work product while, to the extent possible, still providing for open proceedings. (*Department of Corrections v. Superior Court, supra,* 199 Cal.App.3d at p. 1094.) Whether the trial court properly exercised its discretion in balancing those competing interests and in issuing its order is beyond the scope of our grant of review, and has not yet been considered by the Court of Appeal, which ruled categorically that the People had no entitlement to any portion of the sealed transcripts, regardless of what they contained. On remand, the Court of Appeal may consider whether the trial court, under the legal standards set forth herein, properly unsealed the specified portions of the transcripts.

■ Finally, we note that our interpretation of the criminal discovery statutes with respect to third party subpoenas duces tecum appears to be consistent with Proposition 9, the Victims' Bill of Rights Act of 2008: Marsy's Law, which—subsequent to the proceedings in the trial court here— amended the California Constitution to guarantee crime victims a number of rights, including the right "[t]o prevent the disclosure of confidential information or records to the defendant, the defendant's attorney, or any other person acting on behalf of the defendant, which could be used to locate or harass the victim or the victim's family or which disclose confidential communications made in the course of medical or counseling treatment, or which are otherwise privileged or confidential by law." (Cal. Const., art. I, § 28, subd. (b)(4).) Marsy's Law provides that this right, along with the others enumerated in subdivision (b), may be enforced by "[a] victim, the retained attorney of a victim, a lawful representative of the victim, or the prosecuting attorney upon request of the victim." (*Id.,* art. I, § 28, subd. (c)(1).)

■ Marsy's Law evidently contemplates that the victim and the prosecuting attorney would be aware that the defense had subpoenaed confidential records regarding the victim from third parties. As the People have observed, "[n]either the prosecution nor the victim can attempt to address the disclosure of records if they do not know what records are being sought." Kling is correct that this proceeding does not present an opportunity for "expansive proclamations regarding implementation of Marsy's Law," but we do agree with the People that a victim's right to notice of a third party subpoena would be consistent with the prosecution's right to due process.[3]

---

[3] We recommend that the Judicial Council review the relevant rules of court to determine whether any revisions might be appropriate or helpful in light of our decision in the present case.

## DISPOSITION

The judgment of the Court of Appeal is reversed and the cause is remanded for proceedings consistent with our opinion.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

On November 17, 2010, the opinion was modified to read as printed above.